IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| SWAYZE MCCRAY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 3:18-cv-642-SRW |
| | ) | |
| | ) | |
| ANDREW SAUL, | ) | |
| Commissioner of Social Security,[1] | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

**I.    INTRODUCTION**

On July 14, 2016, Plaintiff Swayze McCray filed an application for a period of disability and disability insurance benefits under Title II of the Social Security Act, alleging that he became disabled on February 8, 2016. The application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued an unfavorable decision dated March 16, 2018. Plaintiff appealed that decision and the Appeals Council denied Plaintiff's request for review on May 23, 2018. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner"). *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case is now before the court for

---

[1] Andrew Saul was sworn in as the Commissioner of Social Security on June 17, 2019, and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d). *See also* section 205(g) of the Social Security Act, 42 USC § 405(g) (action survives regardless of any change in the person occupying the office of Commissioner of Social Security).

review of that decision pursuant to 42 U.S.C. § 405(g). Under 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge. *See* Docs. 6, 7. Based on its review of the parties' submissions, the relevant law, and the record as a whole, the court will reverse and remand the Commissioner's decision.

## II. STANDARD OF REVIEW AND REGULATORY FRAMEWORK[2]

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla," but less than a preponderance, "and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence") (citations omitted). The court will reverse the Commissioner's decision if it is convinced that the decision was not supported by substantial evidence or that the proper legal standards were not applied. *Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991). However, reversal is not warranted even if the court itself would have reached a result contrary to that of the factfinder. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991). A reviewing

---

[2] For purposes of this appeal, the court uses the Code of Federal Regulations ("C.F.R.") that was effective until March 27, 2017, because that was the version of the C.F.R. in effect at the time Plaintiff filed a claim for benefits. *See* 20 C.F.R. Part 404 and 416, effective March 27, 2017; *see also* https://www.ssa.gov/disability/professionals/bluebook/revisions-rules.html Q.3.

court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179, 1180 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

To qualify for disability benefits and establish his or her entitlement for a period of disability, a person must be unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[3] To make this determination, the Commissioner employs a five-step, sequential evaluation process. *See* 20 C.F.R. § 404.1520.

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative

---

[3] A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3).

3

answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[4]

The burden of proof rests on the claimant through Step Four. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237–1239 (11th Cir. 2004); *see also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003). A claimant establishes a *prima facie* case of qualifying disability once he or she has carried the burden of proof from Step One through Step Four. At Step Five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Phillips*, 357 F.3d at 1238–1239. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242–1243. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy that the claimant can perform. *Id*. at 1239. To do this, the ALJ can use either the Medical Vocational Guidelines ("grids"), *see* 20 C.F.R. pt. 404 subpt. P, app. 2, or call a vocational expert ("VE"). *Id*. at 1239–1240.

---

[4] *McDaniel* is a supplemental security income (SSI) case. The same sequence applies to disability insurance benefits brought under Title II of the Social Security Act. Supplemental security income cases arising under Title XVI of the Social Security Act are appropriately cited as authority in Title II cases, and vice versa. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408, 412 (5th Cir. 1981); *Smith v. Comm'r of Soc. Sec.*, 486 F. App'x 874, 876 n.* (11th Cir. 2012) ("The definition of disability and the test used to determine whether a person has a disability is the same for claims seeking disability insurance benefits or supplemental security income.").

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Id.* at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

## III. ADMINISTRATIVE PROCEEDINGS

Plaintiff was 46 years old at the time he filed his application for benefits and was forty-eight years old at the time of the ALJ's decision. R. 19, 143. Plaintiff is a resident of Fort Mitchell, Alabama. R. 30. He lives in a three-level home with his wife and two young adult children. R. 31. He is a high school graduate and attended, but did not complete, college. R. 31–32. After honorably serving 16 years and nine months in the Army, Plaintiff was medically discharged. R. 32, 36.

Plaintiff testified that his ability to work is limited by his inability to "stay focused at a task," post-traumatic stress disorder, anxiety, depression, right ulnar neuropathy in the elbow, knee pain, back strain, a heart condition, and a "messed up [right] ankle." R. 35, 37–43. Plaintiff's past relevant work was as an infantryman, infantry unit leader, warehouse worker, and forklift driver. R. 36–37, 44, 198–201, 222.

Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since February 8, 2016, the alleged onset date[.]" R. 12. At Step Two, the ALJ found that Plaintiff suffers from the following severe impairments: "congestive heart failure, coronary artery disease, osteoarthritis of the knees, right hand neuropathy, obstructive sleep apnea, post-

traumatic stress disorder (PTSD), adjustment disorder, anxiety disorder, depressive disorder, and ankle arthritis[.]" *Id*. At Step Three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]" *Id*. Next, the ALJ articulated Plaintiff's RFC as follows:

> the claimant has the residual functional capacity to perform less than the full range of light[5] work as defined in 20 CFR 404.1567(b). The claimant can lift up to 20 pounds occasionally, lift and carry 10 pounds frequently; stand and walk for about six hours, and sit for up to six hours in an eight-hour workday with normal breaks. The claimant requires an alternating sit/stand option at the 30 minute to one-hour interval. The claimant can push/pull with the right upper extremity only occasionally; operate foot controls bilaterally only occasionally; never climb ladders, ropes or scaffolds; can climb ramps and stairs occasionally; and can occasionally stoop, kneel, crouch, crawl, and balance. The claimant can handle and finger with the right upper extremity frequently. The claimant should avoid concentrated exposure to extreme vibration, unprotected heights, and hazardous machinery. The claimant is limited to simple, routine, repetitive tasks, in a work environment free of fast-paced production requirements, involving simple work-related decisions with few if any workplace changes; and can have occasional interaction with the public, coworkers, and supervisors. The claimant requires a hand-held assistive device for uneven terrain and prolonged ambulation, and will be off task at the workstation, up to 5% daily.

R. 14. At Step Four, based upon the testimony of a VE, the ALJ concluded that Plaintiff "is unable to perform any past relevant work." R. 19. At Step Five, based upon Plaintiff's age, education, work experience, and RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform," such as a marker, checker I, or mail clerk. R. 19–20. Accordingly, the ALJ determined that Plaintiff "has not

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

been under a disability . . . from February 8, 2016, through the date of this decision[.]" R. 20.

## IV. DISCUSSION

On appeal, Plaintiff argues that the ALJ erred by failing to assign the proper weight to the disability determination reached by the United States Department of Veterans Affairs ("VA"). Doc. 12 at 3. On September 21, 2016, the VA determined that Plaintiff has a 100% combined service-connected disability rating due to the effects of sixteen different impairments, including a 70% assigned disability due to post-traumatic stress disorder ("PTSD"). R. 941–942. Plaintiff contends that a VA disability determination, while not binding on the ALJ, must be considered and afforded "great weight." Doc. 12 at 3–7. Here, the ALJ afforded Plaintiff's VA rating "lesser weight." *Id.* at 4; R. 17. The Commissioner contends that substantial evidence supports the ALJ's decision to discount the VA disability determination. Doc. 13 at 7.

"The SSA regulations provide a decision by any nongovernmental or governmental agency concerning whether an individual is disabled, based on that agency's own rules, does not constitute an SSA decision regarding whether that individual is disabled." *Ostborg v. Comm'r of Soc. Sec.*, 610 F. App'x 907, 914 (11th Cir. 2015) (citing 20 C.F.R. § 404.1504 ("[A] determination made by another agency that you are disabled or blind is not binding on [the Commissioner]")). However, as the Eleventh Circuit has explained on numerous occasions, "'[a]lthough the VA's disability rating is not binding on the [Commissioner], it is evidence that should be given *great weight*.'" *Brady v. Heckler*, 724 F.2d 914, 921 (11th Cir. 1984) (quoting *Olson v. Schweiker*, 663 F.2d 593 (5th Cir. 1981),

citing in turn to *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. 1981)) (emphasis supplied); *see also Kemp v. Astrue*, 308 F. App'x 423, 426 (11th Cir. 2009) ("'A VA rating is certainly not binding on the [Commissioner], but it is evidence that should be considered and is entitled to great weight.'"); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1241 (11th Cir. 1983) ("The findings of disability by another agency, although not binding on the [Commissioner], are entitled to great weight."). The ALJ need not expressly state that she gave the VA's disability determination "great weight" or discuss how much weight she afforded the determination, but it must be apparent from the record that the ALJ "expressly considered and closely scrutinized" the VA's disability determination such that it is clear to a reviewing court that the determination was given the requisite "great weight." *Adams v. Comm'r of Soc.*, 542 F. App'x. 854, 857 (11th Cir. 2013) (citing *Rodriguez*, 640 F.2d at 686, *Brady*, 724 F.2d at 921) (holding that the ALJ did not commit a legal error by failing to "state the precise amount of weight he [gave] the VA's disability determination"). As this court has previously explained, "[a]n ALJ cannot assign anything less than "great weight" to a disability determination by the VA." *Langston v. Berryhill*, No. 2:16-cv-328-SRW, 2017 WL 3820956, at *3 (M.D. Ala. Aug. 31, 2017); *see also Brown-Gaudet-Evans v. Comm'r of Soc. Sec.*, 673 F. App'x 902, 904 (11th Cir. 2016) (holding that an ALJ cannot "summarily ignore the VA's determination nor give it 'little weight'"); *Gray v. Colvin*, No. 2:15-cv-401-SRW, 2016 WL 5660686, at *4 (M.D. Ala. Sept. 28, 2016) ("Failing to give the V.A.'s disability determination 'great weight' is legal error in and of itself . . . .").

In her decision in this case, the ALJ afforded Plaintiff's 100% VA disability rating "lesser weight" and gave "several reasons" for discounting it. R. 17. These reasons focused

8

primarily, although not exclusively, on the differences between the VA disability standards and those of the SSA. The court finds that the ALJ afforded legally insufficient weight to Plaintiff's 100% VA disability rating; the ALJ was required to give it "great weight." By failing to give "great weight" to the VA rating, the ALJ committed legal error requiring the court to reverse and remand this case to the Commissioner.

This court has previously reached the same conclusion based on similar facts. In *Gray*, it concluded that the ALJ failed to give appropriate weight to the plaintiff's 100% VA disability rating. *Gray*, 2016 WL 5660686, at *3. The court reversed and remanded the plaintiff's claim based upon the ALJ's giving "little weight" to the VA's disability determination. The court explained that, by assigning the VA disability rating "little weight," the ALJ committed "legal error in and of itself." *Id.* at *4. Specifically, the court noted that the Commissioner failed to direct the court to any authority supporting "the notion that an ALJ can depart from the 'great weight' standard *even if he has good reason for doing so.*" *Id.* (emphasis added). Thus, the court remanded the plaintiff's claim to the Commissioner to reconsider the plaintiff's disability after affording "great weight" to the VA's disability rating. *Id.*

Similarly, in *Langston*, this court reversed and remanded where the ALJ gave "little weight" to the VA's 100% disability determination. *Langston*, 2017 WL 3820956, at *4. The court noted that the ALJ "is responsible for formulating an independent disability determination" and may reach a different disability determination from that of the VA. *Id.* However, such a determination must be made while affording "great weight" to the VA disability determination. *Id.* ("[A]n ALJ must assign 'great weight' to the VA's disability

decision before departing from that agency's conclusions.") (citing *Brown-Gaudet-Evans*, 673 F. App'x at 904 ("[T]he ALJ is not required to give the VA's disability determination controlling weight. In making his own determination of whether [a claimant] is disabled, however, the ALJ must seriously consider and closely scrutinize the VA's disability determination and must give specific reasons if the ALJ discounts that determination."). As the court explained, "in departing from the VA's determination, the ALJ cannot lessen the 'great weight' standard." *Id.*

The Commissioner argues that the ALJ's decision provides an explanation for why she assigned the VA's disability determination "lesser weight." R. 17; Doc. 13 at 5. The court acknowledges that the ALJ provided such an explanation. However, it is not convinced that the ALJ's explanation is adequate in light of her failure to give the VA rating "great weight." *See Langston*, 2017 WL 3820956, at *4; *Gray*, 2016 WL 5660686, at *4. Moreover, the court is not persuaded by the ALJ's explanation that she "seriously considere[d] and closely scrutinize[d]" the VA disability determination as required. *See Brown-Gaudet-Evans*, 673 F. App'x at 904.

The ALJ's stated reasons for giving "lesser weight" to the VA rating largely focused on the general differences between the VA evaluation process and that of the Social Security Administration. For example, the ALJ observed that the VA was a different governmental agency with different rules and that its ruling was, therefore, "of limited evidentiary value without consideration of the supporting evidence on which the rating was based." R. 17. The ALJ also observed, correctly, that the ultimate question of disability is reserved for the Commissioner. *Id.*

However, these are the sort of generic conclusions that do not support the discounting of a VA disability determination. *See Daniels v. Berryhill*, No. 3:16-cv-412-WC, 2017 WL 2177336, at *5 (M.D. Ala. May 17, 2017) (reversing and remanding where the court found the "ALJ's reasoning for discounting the VA's disability rating [was] conclusory at best" and "relied simply upon the difference in the 'processes utilized by' the VA and the SSA."); *Harris v. Berryhill*, No. 1:15-cv-838-TFM, 2017 WL 4125256, at *5 (M.D. Ala. Sept. 18, 2017) (finding that the ALJ's reasons for discounting the VA rating "do not include the level of specificity required to demonstrate that he closely scrutinized the VA determination") (citations and internal quotations omitted); *Zahnle v. Colvin*, No. 3:15-cv-1117-J-MCR, 2016 WL 4441592, at *2 (M.D. Fla. Aug. 23, 2016 (finding that the ALJ "failed to meaningfully consider and address what parts of the VA disability determination he credited versus those he did not"). The ALJ may not summarily reject a VA disability rating simply because it is not binding on the ALJ or relies on different criteria. *Beshia v. Comm'r of Soc. Sec.*, 328 F. Supp. 3d 1341, 1347 (M.D. Fla. Sept. 12, 2018) (citation omitted) ("A justified assignment of little weight to a VA disability rating . . . outlines and explains what medical conditions the VA assessed and how they differ from the claimed SSA disability.").

Here, even where the ALJ gave more specific reasons, these reasons were not adequately explained, and they further indicate that the ALJ's decision to give less than great weight to the VA rating was based primarily on the agencies' different standards. For example, the ALJ pointed out that Plaintiff had reported to a consultative examiner that he had not received treatment from a psychologist or psychiatrist. R. 17, 937. The ALJ

observed that "[t]his evidence highlights the differences between the VA determination and the SSA disability process and criteria." R. 17. However, the ALJ did not explain why the agencies' different standards would lead her to give the VA rating less weight, or otherwise explain why Plaintiff's alleged mental impairments were inconsistent with the rating given to him by the VA. Similarly, the ALJ appears to have credited the statements of VA examiners that Plaintiff had a number of physical limitations that would worsen under the "rigors of soldiering," but that he "could perform administrative and clerical work satisfactorily." R. 17, 305, 639, 641. However, the ALJ failed to explain why these statements would cause her to afford less weight to the VA disability determination. The statements were provided before the VA disability determination was made and were given in the context of the military's decision to medically retire Plaintiff from military service. R. 633–638. To the extent that the ALJ credited the statements, she did not adequately explain why they provided a basis for departing from the VA decision.

The court acknowledges that the ALJ included a thorough recitation of the medical evidence, including Plaintiff's treatment with the VA, and she referenced the VA disability rating multiple times in her decision. However, the ALJ failed to give "great weight" to the VA's disability determination, so the decision is based on a legal error necessitating remand. Moreover, the ALJ's stated reasons for discounting the VA rating do not demonstrate that she "seriously consider[ed] and closely scrutinize[d]" the VA determination. *See Brown-Gaudet-Evans*, 673 F. App'x at 904. The reasons given by the ALJ are conclusory and rely primarily on the differing disability standards employed by the VA and the SSA. Because the ALJ afforded legally insufficient weight to the VA's

12

disability determination and did not give specific reasons showing that she seriously considered and closely scrutinized it, the court concludes that the ALJ's decision should be remanded to the Commissioner for further proceedings. On remand, the ALJ should reconsider Plaintiff's claim for benefits after affording "great weight" to the VA's 100% disability determination.

## V. CONCLUSION

Accordingly, for the reasons discussed, the Commissioner's decision will be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) by separate judgment so that the Commissioner can conduct additional proceedings consistent with this opinion. A separate judgment will issue.

DONE, on this the 25th day of October, 2019.

/s/ Susan Russ Walker
Susan Russ Walker
United States Magistrate Judge